# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCE WILLIAMS,<br><br>        Plaintiff,<br><br>    v.<br><br>CDCR, et al.,<br><br>        Defendants. | Case No. 1:14-cv-01912-JLT (PC)<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(Doc. 22)**<br><br>**30-DAY DEADLINE** |

Before the Court for screening is Plaintiff's second amended complaint. Because the Court finds Plaintiff may be able to state a cognizable claim, though he has not done so, the Court **DISMISSES** the matter with leave to amend.

**A.**     <u>**Summary of Plaintiff's Allegations**</u>

Plaintiff complains of acts that occurred while he was an inmate at Pleasant Valley State Prison in 2008-2009 when he contracted Valley Fever. Plaintiff names eight Defendants including, CDCR Director Susan Hubbard; Receiver J. Clark Kelso; PVSP Warden Yates; CDCR Medical Director Dwight Winslow; Appeals Coordinator CCI J. Morgan; Dr. J. Chakatos; Dr. J. Fortune; and Dr. Byron Mui. Plaintiff alleges that every one of these Defendants have violated his rights: "to Medical Care;" to "Due Process of Human Rights;" to be free from cruel and unusual punishment; and that they all violated the First, Eight, and Fourteenth Amendments. However, while Plaintiff lists all of these as claims he is asserting against each of the named

1  defendants, his factual allegations against the individual defendants clearly only apply to one or a
2  two of these claims.
3      Plaintiff alleges that he was transferred to PVSP on July 8, 2008.  Plaintiff alleges that
4  PVSP is located in a coccidiomycosis, or Valley Fever, endemic zone, and that he was knowingly
5  confined in that dangerous environment.  In April of 2009, Plaintiff became very ill and was
6  subsequently diagnosed with Valley Fever.  These events, coupled with his subsequent medical
7  treatment, form the basis of Plaintiff's claims in this action.
8      While Plaintiff has clarified his allegations and provided more factual details, the Second
9  Amended Complaint is extremely difficult to follow.  Further, though Plaintiff has identified each
10 claim he intends to pursue against each Defendant along with the factual allegations upon which
11 he bases each claim, his factual allegations are disjointed, not in chronological order, and are
12 extremely convoluted to say the least.  Thus, Plaintiff is being given the applicable standards
13 based on his stated claims and **ONE FINAL OPPORTUNITY** to correct his pleading
14 deficiencies.

15   **B.  Pleading Requirements**
16       **1.  Federal Rule of Civil Procedure 8(a)**
17     As stated in the prior screening order, "Rule 8(a)'s simplified pleading standard applies to
18 all civil actions, with limited exceptions," none of which applies to section 1983 actions.
19 *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  A complaint
20 must contain "a short and plain statement of the claim showing that the pleader is entitled to relief
21 . . . ."  Fed. R. Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair notice of
22 what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz*, 534 U.S. at 512.
23     Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a
24 cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556
25 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
26 Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is
27 plausible on its face.'"  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual
28 allegations are accepted as true, but legal conclusions are not.  *Iqbal.* at 678; *see also Moss v. U.S.*

*Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

Plaintiff would do well to state which constitutional right(s) he feels was violated by a given Defendant, or group of Defendants, followed by a chronological and orderly statement of his factual allegations of what was done, or not done, which he feels make his claim(s) cognizable.

### D. Claims for Relief

#### 1. Eighth Amendment

##### a. Conditions of Confinement

In the context of conditions of confinement, "Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This standard contains both an objective and subjective element. *See Helling v. McKinney*, 509 U.S. 25,35-36 (1993) (discussing objective and subjective elements of Eighth Amendment Claim). In the context of exposure to disease, the objective element asks whether prison officials have exposed the prisoner to a serious medical risk of disease. To determine whether the medical risk to which Plaintiff is exposed is serious, the court considers whether the

"risk the prisoner complains of [is] so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36 (italics in original).

The subjective element of an Eighth Amendment Violation asks whether the prison official acted with "deliberate indifference" in denying medical care or exposing the prisoner to the risk of disease. For conduct to qualify as "deliberately indifferent" in the context of conditions of confinement, the conduct must be shown to be "wanton." "[T]he constraints facing the *official*" must be considered when determining whether conduct is wanton. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). A depravation of a treatment or the exposure to a hazard may be wanton only if it was within the official's ability at the time to avoid the exposure to risk or deprivation of care. "Wantonness consist[s] of 'acting sadistically and maliciously for the purpose of causing harm." *Id*., quoting *Whitley v. Albers*, 475 U.S. 312, 321-322 (1986).

Plaintiff bases his claims against Defendants CDCR Director Susan Hubbard, CDCR Medical Director Dwight Winslow, and PVSP Warden Yates on the policies and/or procedures that led to his placement in PVSP. However, despite having been given the applicable standards in the prior screening order, Plaintiff's allegations against them do not address either the objective or subjective elements of an Eighth Amendment claim.

As to the objective component, Plaintiff alleges no facts to indicate that the risk of exposure to the spores at PVSP is any higher than in the surrounding community. It is worth noting that the attention of Courts and official policy-makers regarding the risk of Valley Fever have focused on PVSP and Avenal State Prison. These facilities have drawn particular state and district court attention because, although eight California correctional facilities are located in the endemic area, these two facilities account for 85% of the occurrence of reported cases of Valley Fever in California. *See Plata v. Brown*, 2013 WL 3200587 (N.D. Cal. 2013) at *2. However, an individual who lives out of custody anywhere in the Southern San Joaquin Valley, also runs a relatively high risk of exposure to Coccidioides immitis spores. Unless there is something about a prisoner's conditions of confinement that raise the risk of exposure substantially above the risk

experienced by the surrounding community, it cannot be said that the prisoner is forcibly and knowingly exposed to a risk the society would not tolerate to meet the objective component of a claim under the Eighth Amendment.

Further, Plaintiff fails to state allegations to meet the subjective component of an Eighth Amendment claim. Plaintiff has not shown that the proposed new Defendants acted *wantonly* in formulating the policies and procedures which resulted in Plaintiff's placement in PVSP and subsequently at Corcoran State Prison. As noted above the State of California has eight of its correctional facilities -- and therefore a substantial proportion of its inmate capacity -- located in the Southern San Joaquin Valley. If Plaintiff's allegations (that he was transferred to PVSP where Valley Fever is known to be endemic and contracted Valley Fever, with nothing more) were cognizable, the State of California would not be able to house any inmates at PVSP or Avenal State Prison, and might not be able to house any inmates in any of the eight facilities located in the endemic area.

In addition, Plaintiff has failed to allege any facts from which to infer that these Defendants were deliberately indifferent to Plaintiff's risk of exposure to the spores that cause Valley Fever. Not only has Plaintiff not alleged any facts from which a finding of deliberate indifference could be inferred, the factual background presented in *Plata* and other cases since 2005 demonstrate that California policy makers have been attempting for years to accommodate constitutional requirements. Thus, Plaintiff fails and is unable to state a cognizable claim against Defendants CDCR Director Susan Hubbard, CDCR Medical Director Dwight Winslow, and PVSP Warden Yates due to the policies and/or procedures that led to his placement in PVSP. Plaintiff states no allegations against any of the other named Defendants upon which liability for his placement at PVSP may be inferred.

### b. Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*,

1  439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th

2  Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

3  Cir.1997) (en banc))).

4        To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

5  first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

6  could result in further significant injury or the unnecessary and wanton infliction of pain. Second,

7  the plaintiff must show the defendants' response to the need was deliberately indifferent."

8  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091,

9  1096 (9th Cir. 2006) (quotation marks omitted)).

10        The existence of a condition or injury that a reasonable doctor would find important and

11  worthy of comment or treatment, the presence of a medical condition that significantly affects an

12  individual's daily activities, and the existence of chronic or substantial pain are indications of a

13  serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v.*

14  *Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc.*

15  *v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v.*

16  *County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994). The Court accepts that contracting

17  disseminated Valley Fever is a serious medical need for screening purposes.

18        Deliberate indifference is "a state of mind more blameworthy than negligence" and

19  "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v.*

20  *Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). "Deliberate indifference

21  is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this

22  standard, the prison official must not only 'be aware of the facts from which the inference could

23  be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

24  inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been

25  aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter

26  how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188

27  (9th Cir. 2002)).

28        In medical cases, this requires showing: (a) a purposeful act or failure to respond to a

prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

Plaintiff's allegations against Dr. Mui, Dr. Chakatos, and Dr. Fortune are exclusively based on their involvement in his medical care and treatment. As to Dr. Chakatos and Dr. Fortune, Plaintiff alleges that, when he first began to feel ill in April of 2009, he complained to Dr. Chakatos of chest pains, coughing, throwing-up, night sweats, fatigue, joint aches, loss of appetite, breathing problems, weight loss, staph infections, weakness, headaches, and diarrhea. (Doc. 22, p. 18.) Dr. Chakatos indicated that it sounded like Plaintiff was coming down with a cold or flu, gave Plaintiff some cough medicine, "a 3-day lay in order," and sent Plaintiff back to his cell. (*Id.*) Plaintiff alleges that despite being aware of the occurrence rate of Valley Fever in PVSP, Dr. Chakatos did not order any blood tests or chest x-rays or saliva tests. (*Id.*, at p. 19.) Plaintiff alleges that, in that same month,[1] he complained to Dr. Fortune of the same symptoms with the same result – Dr. Fortune ordered no tests but diagnosed a cold/flu and told Plaintiff to drink plenty of fluids. (*Id.*, at pp. 23-24.) This alleged misdiagnosis of Plaintiff with a cold or flu rather than Valley Fever when he first consulted Dr. Chakatos and later Dr. Fortune is, at most, medical malpractice. *See Broughton*, 622 F.2d at 460.

Plaintiff further alleges that on May 4, 2009, he collapsed and was transported to Coalinga Medical Center emergency room where he was seen by a doctor who diagnosed him with Valley Fever. The doctor told Plaintiff he would need to receive intravenous Amphotericin B for several months. (*Id.*, at pp.19, 24.) Eventually, Plaintiff was released with a prescription of Fluconazole. (*Id.*)

---

[1] Dr. Chakatos and Dr. Fortune treated Plaintiff during the same period of time -- April of 2009 until his transfer to another facility.

1       Plaintiff alleges that Dr. Chakatos failed to monitor his condition such that he again
2  required hospitalization, where it was determined that he had relapsed and he was again placed on
3  I.V. Amphotericin B for five months. (*Id.*, at pp. 19-20.) In December of 2009, Plaintiff
4  allegedly complained to Dr. Chakatos of chest pains and difficulty breathing for which Dr.
5  Chakatos gave Plaintiff a lay-in order and sent him away without medical care. (*Id.*, at p. 20.)
6  On January 1, 2011, Plaintiff relapsed and was again sent to the hospital for five months of I.V.
7  Amphotericin B. (*Id.*) When Plaintiff returned to PVSP, Dr. Chakatos took Plaintiff off Flu-
8  conazole as well as his inhaler and Vitamin C. (*Id.*) Plaintiff went over a month without them
9  and Dr. Chakatos reported Plaintiff never contracted Valley Fever. (*Id.*) Plaintiff subsequently
10 relapsed and had to be hospitalized and received five months of I.V. medications. (*Id.*)

11      Plaintiff's allegations that Dr. Chakatos interfered with Plaintiff's receipt of Flu-conazole
12 as prescribed by Dr. Mui may be actionable. *See Estelle*, 429 U.S. at 104-05 (actions that
13 "interfere with treatment once prescribed" are cognizable); *White v. Napoleon*, 897 F.2d 103 (3rd
14 Cir. 1990) (finding a cognizable claim for deliberate indifference where prison officials ignored
15 private hospital's treatment orders and refused inmate's access to prescribed medication); *Tolbert
16 v. Eyman*, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim for deliberate indifference
17 where warden refused to authorize prisoner's receipt of medicine, which was required to prevent
18 serious harm to his health, that had been previously prescribed by a physician). However,
19 Plaintiff's bases his allegations against Dr. Fortune on Plaintiff allegedly being on Flu-conazole
20 for Valley Fever "for over 2 years" during which he allegedly had three relapses. (Doc. 22, pp.
21 24-25.) In addition to the fact that these allegations against Dr. Fortune completely contradict
22 Plaintiff's allegations that Dr. Chakatos interfered with Plaintiff's receipt of his medication to treat
23 Valley Fever (he could not have received it for two years straight and had it discontinued during
24 the same time), Plaintiff fails to state allegations to show that anything Dr. Chakatos or Dr.
25 Fortune did, or failed to do, negatively impacted his medical condition -- let alone was in
26 deliberate indifference to a known risk of serious harm to Plaintiff.

27      Further, Plaintiff alleges that Dr. Fortune did not "have any records that the Plaintiff had
28 ever been in the hospital for the relapse of the Valley Fever Cocci disease" . . . . (*Id.*) and that he

8

did not receive Flu-conazole until approximately three and a half weeks after Dr. Mui[2] ordered it, but he states no allegations to show that Dr. Fortune was responsible for this delay, or that the delay caused him any harm (*id.*). *See Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).

Plaintiff also alleges that Dr. Fortune, like Dr. Chakatos, told Health Care Services in Sacramento that Plaintiff did not have Valley Fever, but his allegations do not show that Dr. Fortune knew that Plaintiff had contracted Valley Fever, that this statement was made with deliberate indifference to Plaintiff's serious medical condition, or that this statement impacted his treatment or condition (*id.*) so as to cause him harm. *See Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).

Plaintiff claims Dr. Fortune also told Health Care Service that Plaintiff never had angina or a muscle disease called "Rahbdomylosis" (*id.*), but Plaintiff fails to state any allegations to show that any such statements by Dr. Fortune created a known risk of serious harm, or in any way negatively impacted Plaintiff's medical treatment (*id.*) so as to cause him harm; nor does Plaintiff explain how these symptoms/conditions. Thus, these claims appear to be unrelated to his Valley Fever condition and violate Rule 18. As discussed above, these allegations amount at most to medical malpractice, but are not cognizable for deliberate indifference under the Eighth Amendment.

Plaintiff's allegations against Dr. Mui are likewise not cognizable. Plaintiff alleges that Dr. Mui was the "Disease Control" physician who treated him three times when Plaintiff's condition relapsed and he was hospitalized from January 1, 2011 to May 4, 2011; from August 2012 to December of 2012; and from May of 2013 continuing for another five months. (Doc. 22, at pp. 27-28.) Plaintiff alleges that during those hospital stays, he received Amphotericin B intravenously, was not made aware of the grave side-effects of the medication, and only saw Dr. Mui once. (*Id.*) Failure to advised Plaintiff of the negative side-effects of a medication utilized to control his Valley Fever may constitute, at the most medical malpractice -- which is a form of professional negligence. However, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice'

---

[2] Elsewhere Plaintiff alleged that Dr. Lymar was the physician who prescribed Flu-conazole for his Valley Fever.

will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  Further, if, as implied by Plaintiff's allegations against the other physicians for restricting his access to it, the medication that Dr. Mui put Plaintiff on was medically necessary and a reasonable choice to be made for his treatment, failure to advise of negative side-effects may not even constitute medical malpractice.  Thus, Plaintiff fails to state a cognizable claim against Dr. Mui.

### 2. Receiver Kelso -- Qualified Immunity

As noted in Plaintiff's amended complaint, Defendant J. Clark Kelso is the Receiver for CDCR's health care system.  *See Plata v. Schwarzenegger*, et al., C01–1351–TEH (N.D.Cal. Jan. 23, 2008).  Upon his appointment in 2008, "[t]he Receiver and his staff [were granted] the status of officers and agents of [the Plata Court], and as such [were] vested with the same immunities as vest with [the Plata] Court." *Id*.  Those judicial immunities extend to immunity from suit. *See Pierson v. Ray*, 286 U.S. 547, 553–54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ...."). *See also Coleman v. Schwarzenegger*, 2007 WL 4276554 (E.D.Cal. Nov.29, 2007) (holding that a receiver who was "imbued with the power and authority to act in the name of the Court as the Court's officer" and who "acts as a 'surrogate' of the court" had quasi judicial immunity).  "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  There are two primary exceptions to the absolute judicial immunity -- where action is not taken in the judicial capacity and where the action, "though judicial in nature, is taken in the complete absence of all jurisdiction." *See id*. at 11–12.

Here, Plaintiff's allegations acknowledge that Defendant Kelso was appointed to oversee medical care at the prisons in the state of California. (Doc. 22, p.8.)  Plaintiff's allegations assert that Defendant Kelso is liable for "not monitoring the Valley Fever cocci disease the [sic] Plaintiff suffers from the [sic] (Valley Fever Cocci Disease) with great side effects, such as,

headaches, upperbody joint pains, stomach cramps, . . . ." (*Id.*, at p. 9.) Plaintiff, thus, asserts that Defendant Kelso failed to act properly in his role as Receiver, but fails to show that he acted in a manner outside of the bounds of all jurisdiction. Accordingly, Defendant Kelso is entitled to quasi-judicial immunity and suit may not be maintained against him.[3]

### 3. Due Process & Inmate Appeals

Plaintiff's allegations against PVSP Appeals Coordinator CCI J. Morgan are solely based on inmate appeals he filed seeking transfer to another facility. (Doc. 22, pp. 15-17.) To this end, Plaintiff alleges that if he had been granted the transfer out of PVSP when first requested, he would not have suffered three relapses in his condition and may not have contracted the disseminated form of Valley Fever. (*Id.*) Plaintiff also alleges that he filed an appeal regarding his transfer from PVSP to Corcoran State Prison, but that Morgan denied it as not an emergency. (*Id.*)

The Due Process Clause protects prisoners from deprivations of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state such a claim, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see*

---

[3] To the extent Plaintiff attempts to amend his complaint to allege that Kelso was aware of Plaintiff's medical needs and failed to act upon that knowledge, any such allegations would similarly entitle Kelso to absolute quasi-judicial immunity because Plaintiff would again be alleging that Kelso failed to act within his capacity as the Receiver of CDCR's health care system.

*also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996). Accordingly, Plaintiff has not stated a cognizable claim against Appeals Coordinator Morgan based on the denial of his inmate appeals seeking transfer to a facility out of the area endemic to Valley Fever.

Plaintiff also alleges that Morgan did not call his family to let them know he was hospitalized and did not tell his family that he had been hospitalized when they called. (Doc. 22, at pp. 15-17.) There is no constitutional requirement for any prison staff to advise an inmate's family of the inmate's hospitalization. While it would have been courteous for Morgan to have done so, this failure does not violate any of Plaintiff's rights under the United States Constitution.

### 4. Supervisory Liability

Plaintiff also alleges that the quality of the medical health care provided to inmates with Valley Fever under CDCR Medical Director Dwight Winslow was so poor that it constituted cruel and unusual punishment. However, as stated in the prior screening order, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under

section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.*

The Supreme Court has rejected liability on the part of supervisors for "knowledge and acquiescence" in subordinates' wrongful discriminatory acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument.") However, "discrete wrongs – for instance, beatings – by lower level Government actors . . . if true and if condoned by [supervisors] could be the basis for some inference of wrongful intent on [the supervisor's] part." *Iqbal*, 556 U.S. at 683. Further, the Ninth Circuit recently held that where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). It is under this rubric that the traditional and still valid elements of supervisor liability within the Ninth Circuit are properly analyzed.

It is worth restating that "'bare assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that

13

conclusion is cast in the form of a factual allegation." *Id.*

Plaintiff's allegations against Director Winslow, based on his personal participation in Plaintiff's placement at PVSP have been previously discussed. Plaintiff has not alleged any facts indicating that Director Winslow knew of any violations by medical staff under his direction and failed to act to prevent them, or that Director Winslow promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, at 646. Thus, Plaintiff fails and is unable to state a cognizable claim against Director Winslow for the medical care and treatment he received from doctors after he contracted Valley Fever.

## II. CONCLUSION

For the reasons set forth above, Plaintiff's Second Amended Complaint is dismissed with leave to file a third amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in any third amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The third amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's third amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes all prior versions, *Lacey*

14

*v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with **ONE FINAL OPPORTUNITY** to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his third amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Second Amended Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. **Within 30 days** from the date of service of this order, Plaintiff must file a third amended complaint curing the deficiencies identified by the Court in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated:  **October 29, 2015**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE